BEN F. CONKEY, APPELLEE, V. HANS KNUDSEN, JR., ET AL., APPELLEES: HANS KNUDSEN ET AL., APPELLANTS: RALPH GEORGE ET AL., INTERVENERS, APPELLEES.

284 N. W. 737

FILED MARCH 10, 1939. No. 30483.

*Malcolm R. Smith, S. W. McKinley, Jr.,* and *William P. Warner,* for appellants.

*George W. Leamer, W. V. Steuteville, Sidney T. Frum, P. F. Verzani* and *D. M. Vinsonhaler, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,. CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a suit to quiet title to certain accreted lands along the Missouri river in Dakota county. The trial court entered an order quieting plaintiff's title to the lands in question as against the defendants Hans Knudsen, Sine Knudsen, Maggie Leedom, and Otis Wood. From this order all of the defendants appeal.

The record discloses that plaintiff became the owner of the north half of the south half of section 13, involved herein, by the will of his cousin, Frank Conkey. Plaintiff likewise became the owner of the south half of the north half of section 13 and subsequently sold it to one Christensen. The accreted lands in question lie to the east of these two tracts. No claim is made by Christensen to any of the accreted lands other than those contained within the boundaries of the south half of the north half of section 13. Plaintiff claims the accretions lying east of the east

boundaries of the lands owned by Christensen and himself and which are shown in part in the following plat as lots 2 and 3 in section 17 and the south half of the north half and the north half of the south half of section 16. The accreted lands claimed by plaintiff are shown on the plat by the broken lines interspersed with small circles.

The accreted lands involved lie between the Missouri river and what is termed the high bank in the evidence. The high bank is represented by the line on the plat extending from points A to B, and was the west bank of the Missouri river in its former location in 1909. The river shifted its course so that in 1910 and 1911 it ran approximately as represented by the line extending from points A to X. The line designated as A to F represents the course of the river as shown by the government survey of 1858. It must also be borne in mind that the designation of the

accreted lands as sections, or parts of sections, is done only for convenience. The lands originally surveyed as such sections have been washed away and replaced by the accreted lands heretofore described.

It is not disputed that the defendant Otis Wood is the owner of the high bank in the north half of the north half of section 13, designated on the plat by the name of "Wood." Neither is it disputed that he owns the accreted lands east of the high bank represented on the plat as lot 1 in section 17 and the north one-fourth of section 16. The record discloses that Wood moved on the north half of the northeast quarter of section 13 in 1926, and at the same time took possession of the accreted lands immediately to the east of it. This defendant claims also to be the owner of the accreted land designated on the plat as lot 2 in section 17 by adverse possession. When defendant Wood located on the north half of the northeast quarter of section 13, a fence extended east along his south line from the high bank to a point 30 rods east of the east line of section 17. The evidence of the defendant Wood is that there was no gate in this fence between lots 1 and 2 until 1933, at which time he fenced in lot 2. The adverse possession of Wood prior to 1933 is based on the fact that he pastured some cows on that tract in 1926, and subsequent thereto. The testimony of Wood is that the division fence between lots 1 and 2 was in poor shape and that he drove his cattle through where the fence was down. After a consideration of all the evidence we are convinced the trial court rightfully determined that Wood failed to establish title by adverse possession.

The defendant Hans Knudsen claims title to the south half of section 17 and the south half of section 16 as shown on the plat. He went into possession in 1933, and fenced in parts of the land in 1934 and 1935. Clearly, no title was obtained by adverse possession as the statutory period of ten years could not possibly have elapsed. Sine Knudsen claims some interest in this tract by virtue of a quitclaim deed. Title was not shown to be in the grantor and consequently the deed can convey no interest to Sine Knudsen.

Defendant Maggie Leedom claims title to the south half of the northwest quarter and the southwest quarter of the northeast quarter of section 16 as shown on the plat. The record is clear that this defendant did not move onto this land until 1934. She also claims title by a quitclaim deed. No title was shown to be in the grantor and adverse possession was not shown for the statutory period.

All defendants contend, however, that plaintiff has failed to show title in himself and invoke the rule that he must rely upon the strength of his title and not upon the weakness of that of defendants.

The record discloses that Frank O. Conkey became the owner of the south half of the northwest quarter and the southwest quarter of the northeast quarter of section 13 by a deed in 1909. Frank O. Conkey also became the owner of the north half of the southeast quarter of section 13 by deed in 1926. The high bank ran through both of these tracts. All of the accreted lands between these tracts and the Missouri river became the property of Frank O. Conkey by virtue of these deeds. It is true that the sale of the south half of the north half of section 13 to Christensen would ordinarily convey the accretions between this tract and the river to the purchaser. The record shows, however, that Christensen never claimed any accreted land east of the west boundary of section 17 and that Frank O. Conkey's heirs remained in possession of these accretions and claimed them up to the date of the trial of this case. It cannot be questioned that Christensen and plaintiff could agree upon their respective interests in the accretions adjoining their lands regardless of their exact legal rights. *McCoy v. Paxton,* 156 Ia. 194, 135 N. W. 1091.

The following principles of law appear to control the decision of the case: "It is well settled that where, as in this case, the water of a river recedes gradually, changing the channel of the stream and leaving the land dry which was theretofore covered by water, such land belongs to the riparian proprietor." *Topping v. Cohn,* 71 Neb. 559, 99 N. W. 372.

"The plea of title to land by adverse possession, to be effective, must be proved by actual, open, exclusive and continuous possession under claim of ownership for the full statutory period of ten years." *Ellsworth Corporation v. Stratbucker,* 134 Neb. 246, 278 N. W. 381.

It is clear in the record that after plaintiff sold the south half of the north half of section 13 to Christensen, he retained possession of the accretions thereto. The only person who might establish a record title to any of these accretions is Christensen and he disclaims any interest therein. We think plaintiff has a sufficient title to maintain this suit against these defendants under the holding in *Ellsworth Corporation v. Stratbucker, supra,* wherein the court said: "The action is not ejectment but a suit in equity which is maintained to quiet title under the law of Nebraska while plaintiff is in possession. Defendants argue that plaintiff's title fails because a deed from Stevens to plaintiff is missing and that it must rely upon the strength of its own title and not upon the weakness of that of its adversary. In this connection the claims of defendants must be scrutinized. They pleaded adverse possession, but an examination of the record on that issue fails to prove they were in actual, open, exclusive and continuous possession of the strip of land in controversy under claim of ownership for the full statutory period of ten years. Adverse possession by defendants, therefore, was not proved. *Williams v. Lantz,* 123 Neb. 67, 242 N. W. 269. They failed also to prove title or other interest in themselves. Having no defense to plaintiff's cause of action and no valid claim for affirmative relief in equity, plaintiff, as against them, made a *prima facie* case for the quieting of title."

The judgment of the district court is

AFFIRMED.